_____
                                    )
IN RE: LATRICIA L. HARDY,           )
                                    )
            DEBTOR.                  )
-----------------------------)
                                    )
LATRICIA L. HARDY,                  )
                                    )
            Appellant,               )
                                    )
      v.                            ) Civil Action Nos. 16-1968 (EGS)
                                    )                    16-1969 (EGS)
BRYAN S. ROSS, and ALL CREDIT       )                    16-1970 (EGS)
CONSIDERED MORTGAGE, INC.,          )                    17-1017 (EGS)
                                    )                    17-1316 (EGS)
            Appellees.              )                    18-434 (EGS)
_____)


## MEMORANDUM OPINION

On May 31, 2016, Ms. LaTricia Hardy filed a *pro se*,
voluntary bankruptcy petition in the United States Bankruptcy
Court for the District of Columbia ("Bankruptcy Court"). After
two years of litigation, Ms. Hardy appeals six of the Bankrupty
Court's orders. Proceeding *pro se*, Ms. Hardy appeals the
following: (1) the order granting the Trustee's motion to
"turnover" her commercial real estate property, *see* ECF No. 1
(Civ. No. 16-1968); (2) the order "clarifying" that the
Bankruptcy Court's turnover order was not stayed, *see* ECF No. 1
(Civ. No. 16-1969); (3) the order denying Ms. Hardy's request to
"terminat[e] [] conversion to Chapter 7," *see* ECF No. 1 (Civ.
No. 16-1970); (4) the order holding Ms. Hardy in contempt and

denying her motion to dismiss the Chapter 7 Trustee's claims, *see* ECF No. 1 (Civ. No. 17-1017); (5) the order granting All Credit Considered Mortgage, Inc.'s ("ACC") motion for summary judgment, *see* ECF No. 1 (Civ. No. 17-1316); and (6) the order granting the Chapter 7 Trustee's motion to approve a compromise with ACC, *see* ECF No. 1 (Civ. No. 18-434).[1] Also pending are the Chapter 7 Trustee's two motions to dismiss: (1) motion to dismiss as equitably moot Ms. Hardy's appeal as to the turnover order, *see* ECF No. 18 (Civ. No. 16-1968); and (2) motion to dismiss as time-barred Ms. Hardy's appeal of the compromise order, *see* ECF No. 21 (Civ. No. 16-1968).

The Court has considered all of the appeals and motions, the responses and replies thereto, the voluminous record, and the applicable law, and hereby **AFFIRMS** the Bankruptcy Court's six orders, **GRANTS** the Chapter 7 Trustee's motion to dismiss as equitably moot, and **DENIES** the Chapter 7 Trustee's motion to dismiss as time-barred.

## I. Background

On May 31, 2016, Ms. Hardy filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. *See* A.R., ECF

---

[1] The Court *sua sponte* consolidated all of Ms. Hardy's appeals within civil case number 16-1968, finding that the six cases involved common issues and grew out of the same event. *See* Civ. Case Nos. 16-1969, 16-1970, 17-1017, 17-1316, 18-434.

No. 29-1 at 5(Civ. No. 16-1698).[2] Ms. Hardy and her mother,
Patricia White, owned a commercial real estate property located
at 1414-1416 Pennsylvania Avenue in Southeast, District of
Columbia. *See* A.R., ECF No. 27 at 5 (Civ. No. 16-1968). After
the Chapter 13 Trustee moved to dismiss the case, Ms. Hardy
filed a motion to convert her case to Chapter 11. A.R., ECF No.
12-1 at 26-27 (Civ. No. 16-1968). On June 24, 2016, ACC—a
creditor with a purported lien on the property—filed a motion to
dismiss with prejudice or, in the alternative, to convert the
case from Chapter 11 to Chapter 7. *Id.* at 28-45. On July 25,
2016, following a hearing, the Bankruptcy Court converted Ms.
Hardy's Chapter 13 case to Chapter 7 and appointed Bryan Ross as
the Chapter 7 Trustee ("the Trustee"). *See* Docket, ECF No. 29-1
at 10 (Civ. No. 16-1968). On August 30, 2016, Ms. Hardy filed a
"motion requesting termination of conversion to Chapter 7
liquidation." A.R., ECF No. 12-1 at 152 (Civ. No. 16-1968). The
Bankruptcy Court denied the motion. *Id.* at 159. On September 22,
2016, Ms. Hardy noticed her appeal of that order in this Court.
ECF No. 1 (Civ. No. 16-1970).

On August 17, 2016, the Trustee filed a motion for an order
approving the turnover of Ms. Hardy's co-owned commercial real

---

[2] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

estate property. A.R., ECF No. 12-1 at 129-134 (Civ. No. 16-1968). The Bankruptcy Court granted the turnover motion on September 9, 2016, ordering Ms. Hardy to "immediately turnover" her property and authorizing the Trustee to "take possession and control." *Id.* at 154-55. On September 22, 2016, Ms. Hardy noticed her appeal of that order in this Court. ECF No. 1 (Civ. No. 16-1968).

On September 19, 2016, the Bankruptcy Court also issued an order "clarifying that no stay of the Court's turnover order is in place pending disposition of the motion for a stay" that Ms. Hardy had filed. A.R., ECF No. 12-1 at 160 (Civ. No. 16-1968); *see also* A.R., ECF No. 29-1 at 14 (Civ. No. 16-1968). In so doing, the Bankruptcy Court emphasized that "the turnover order has **not** been stayed by the filing of a motion to stay" and that Ms. Hardy "remains obligated to comply with it." A.R., ECF No. 12-1 at 160 (Civ. No. 16-1968)(emphasis in original). The Bankruptcy Court subsequently denied Ms. Hardy's motion for a stay of the turnover order. *See* A.R., ECF No. 29-1 at 16 (Civ. No. 16-1968). On September 22, 2016, Ms. Hardy noticed an appeal in this Court of the clarifying order, but not the denial of her motion to stay. ECF No. 1, (Civ. No. 16-1969).

On November 21, 2016, Ms. Hardy filed a motion for an emergency temporary restraining order in this Court, which the Court construed as a motion to stay the Bankruptcy Court's

orders denying her motion to "terminate" the conversion from
Chapter 13 to Chapter 7 and granting the Trustee's turnover
motion pending appeal. *See* TRO Mot., ECF No. 10 (Civ. No. 16-
1968); Mem. Op., ECF No. 17 at 2 (Civ. No. 16-1968). The Court
denied Ms. Hardy's motion on December 29, 2016. *See* Order, ECF
No. 16 (Civ. No. 16-1968). In so doing, the Court allowed the
Chapter 7 bankruptcy case to proceed.

The Trustee—having been authorized to sell the property[3]—
filed a motion to sell. However, Ms. Hardy purportedly refused
to comply with the turnover order and vacate the premises.
Therefore, on April 28, 2017, the Trustee filed a motion to show
cause why Ms. Hardy should not be held in contempt. *See* A.R.,
ECF No. 29-1 at 115-21 (Civ. No. 16-1968). The Trustee alleged
that Ms. Hardy rented the property to at least two tenants and
refused to leave, in violation of the turnover order. *Id.* at
117-20. On May 25, 2017, after a hearing, the Bankruptcy Court
granted the Trustee's motion and held Ms. Hardy in contempt.
A.R., ECF No. 29-2 at 5-11 (Civ. No. 16-1968). Finding that Ms.
Hardy failed to comply with its turnover order, the Bankruptcy
Court directed her to produce all leases and lessees' contact
information and immediately cease leasing the property. *Id.* at

---

[3] On November 15, 2015, the Bankruptcy Court authorized the
Trustee to sell Ms. White's interest in the property along with
Ms. Hardy's interest. *See* A.R., ECF No. 29-1 at 116 ¶ 5 (Civ.
No. 16-1968).

10. It also voided any leases and authorized the Trustee or the United States Marshal to evict any tenants and occupants. *Id.* at 11. On May 26, 2017, Ms. Hardy noticed an appeal of that order in this Court. ECF No. 1, (Civ. No. 17-1017).

A few days later, the Bankruptcy Court approved and ratified the sale of the property over Ms. Hardy's opposition. A.R., ECF No. 29-2 at 18-26 (Civ. No. 16-1968). The Bankruptcy Court ordered the Trustee to pay the liens attached to the property, including ACC's claims. *Id.* at 22. It also ordered the Trustee to pay Ms. White her one-half share in the remaining property. *Id.* The sale was finalized on July 5, 2017, when the Trustee executed the deed. A.R., ECF No. 29-3 at 20-24 (Civ. No. 16-1968).

Meanwhile, Ms. Hardy had been litigating the validity of ACC's lien in the Superior Court for the District of Columbia. *See ACC v. Hardy*, 2014 CA 4580; A.R., ECF No. 12-1 at 58-65 (Civ. No. 16-1968). In September 2015, Superior Court Judge Stuart Nash entered summary judgment in ACC's favor, finding that it had a valid, enforceable claim to Ms. Hardy's property. *Id.* at 60.[4]

---

[4] Ms. Hardy appealed the Superior Court decision to the Court of Appeals for the District of Columbia. The case has been stayed pending resolution of Ms. Hardy's bankruptcy proceedings. *See* DCCA Order, ECF No. 7-1 (Civ. No. 17-1316).

Similarly, on April 10, 2017, Ms. Hardy objected to the
validity of ACC's lien in Bankruptcy Court. A.R., ECF No. 4 at
4-9 (Civ. No. 17-1316). In response, ACC filed a motion for
summary judgment, seeking to establish that it had a valid lien.
A.R., ECF No. 29-3 at 25-26 (Civ. No. 16-1968). Ms. Hardy
opposed that motion and filed a cross-motion for summary
judgment. *See id.* at 37-40. On June 17, 2017, the Bankruptcy
Court granted ACC's motion for summary judgment, finding that
its lien was indeed valid. *Id.* at 50-69. On June 30, 2017, Ms.
Hardy noticed an appeal of that summary judgment order in this
Court. *See* ECF No. 1 (Civ. No. 17-1316).

Once the Bankruptcy Court found that ACC had a valid lien,
a dispute arose over the amount that ACC was owed from the
turnover sale. *See* A.R., ECF No. 29-4 at 6-11 (Civ. No. 16-
1968). In order to avoid further litigation, the Trustee and ACC
proposed a settlement agreement whereby ACC would accept a
"short" payment—less than the amount it was allegedly owed—and,
in exchange, the Trustee would release ACC of all claims against
it. *See id.* at 9 ¶¶ 19-20. On October 23, 2017, the Bankruptcy
Court approved the Trustee's proposed compromise, despite Ms.
Hardy's objections. *Id.* at 51-56. In so doing, the Bankruptcy
Court authorized the Trustee to pay ACC and Ms. White the
amounts both were owed under the agreement. *Id.* at 54-55. On

November 6, 2017, Ms. Hardy noticed an appeal of that approval order in this Court. *See* ECF No. 1 (Civ. No. 18-434).

All of Ms. Hardy's appeals are now ripe for review.

## II. Standard of Review

The Court has jurisdiction over Ms. Hardy's appeals pursuant to 28 U.S.C. § 158, which provides that: "(a) The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges."

As an appellate court, this Court reviews legal questions and conclusions *de novo* and reviews findings of fact under a clearly erroneous standard. *See In re Chreky*, 450 B.R. 247, 251-52 (D.D.C. 2011); *see also In re WPG, Inc.,* 282 B.R. 66, 68 (D.D.C. 2002) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405 (1990)). "A finding [of fact] is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Johnson*, 236 B.R. 510, 518 (D.D.C. 1999)(quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). As the Seventh Circuit vividly described, "[t]o be clearly erroneous, a decision must . . . strike us as wrong with the force of a five week old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir. 1988).

Finally, the Court reviews a bankruptcy court's evidentiary rulings under the abuse of discretion standard. *See Haarhuis v. Kunnan Enter., Ltd.,* 177 F.3d 1007, 1015 (D.C. Cir. 1999). "[A]n abuse of discretion occurs when the [bankruptcy] court relies on clearly erroneous findings of fact, fails to consider a relevant factor, or applies the wrong legal standard." *Pigford v. Johanns,* 416 F.3d 12, 23 (D.C. Cir. 2005). The party seeking to reverse the bankruptcy court's ruling bears the burden of proof and may not prevail by showing "simply that another conclusion could have been reached." *In re Johnson,* 236 B.R. at 518 (quotations omitted).

## III. Analysis

Ms. Hardy appeals six of the Bankruptcy Court's orders. The Trustee filed two motions to dismiss at least three of those appeals. The Court addresses each in turn.

### A. The Bankruptcy Court's Turnover Order is Affirmed

Ms. Hardy argues that the Bankruptcy Court erred when it granted the Trustee's motion for a turnover order. *See* Appellant's Br., ECF No. 9 (Civ. No. 16-1968). She contends that a turnover order is only appropriate when there is no legitimate dispute over what is owed to the debtor. *See id.* at 19. Therefore, she argues that the turnover order was not appropriate because she disputes the validity of ACC's purported deed of trust lien. *See id.* at 10-12, 19. The Trustee responds

by arguing that the Bankruptcy Court correctly ordered the turnover because the amount owed to Ms. Hardy is not in dispute. Appellee's Br., ECF No. 12 at 10-12, 21-28 (Civ. No. 16-1968).

In addition, the Trustee argues that Ms. Hardy's appeal is equitably moot now that the property at issue has been sold to a third party. Appellee's Mot., ECF No. 18 ¶ 8 (Civ. No. 16-1968); *see also* Appellee's Br., ECF No. 21 at 12-14 (Civ. No. 17-1017). Ms. Hardy contends that her appeal should not be dismissed as moot because the illegality of the bankruptcy proceeding would affect the distribution of the proceeds from the sale of the property. Appellant's Opp'n, ECF No. 20 (Civ. No. 16-1968).

"Under the bankruptcy code, the sale of property to a good faith purchaser cannot be overturned on appeal unless that sale was stayed pending appeal." *In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 872 (D.C. Cir. 2014) (citing 11 U.S.C. § 363(m)). As articulated in *Advantage Health Plan, Inc. v. Potter*, "the doctrine of equitable mootness provides that a bankruptcy appeal may 'be dismissed as moot when, [although not constitutionally moot and although] effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" 391 B.R. 521, 542 (D.D.C. 2008) (quoting *In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 143 (2d Cir. 2005); *citing In re AOV Indus., Inc.,* 792 F.2d 1140, 1147-48 (D.C. Cir. 1986)). The Court of Appeals for the District of Columbia Circuit ("D.C.

Circuit") has "dismissed as moot appeals where the operation of § 363(m) has left us unable to fashion a remedy to address appellants' asserted injury." *In re Hope 7 Monroe St.*, 743 F.3d at 872 (citing *Allen v. Wells Fargo Bank Minn.,* No. 03-7152, 2004 WL 2538492 (D.C. Cir. Nov. 9, 2004); *Hicks v. Pearlstein (In re Magwood),* 785 F.2d 1077, 1080-81 (D.C. Cir. 1986)).

The sale of Ms. Hardy's property was not stayed pending appeal. Indeed, this Court denied Ms. Hardy's emergency motion for a stay of the turnover order. *See* Order, ECF No. 16 (Civ. No. 16-1968); *see also* Mem. Op., ECF No. 17 (Civ. No. 16-1968). Further, the property was sold to a third party and the sale was finalized when the Trustee executed the deed on July 5, 2017. A.R., ECF No. 29-3 at 20-24 (Civ. No. 16-1968). Thus, the bankruptcy plan and turnover sale were "substantially implemented," precluding effective remedy. *In re AOV Indus., Inc.,* 792 F.2d at 1147 (finding the appeal moot because the bankruptcy had been "substantially implemented," including stock sold, settlements completed, and payments made to creditors).

Ms. Hardy appears to argue that the doctrine of equitable mootness does not prevent the Court from reversing the order approving the distribution of funds. *See* Appellant's Opp'n, ECF No. 20 at 2 (Civ. No. 16-1968); Appellant's Reply, ECF No. 22 at 6-7 (Civ. No. 17-1017). She is correct. *See In re Hope 7 Monroe St.*, 743 F.3d at 873 ("Section 363 does not grant to a claimant

that has received a distribution the same protections it gives
to a good faith purchaser of the estate's property. The policy
underlying § 363(m) ensures the bankruptcy estate obtains
maximum value through its sale of property by providing a bona
fide purchaser assurances of finality."). However, by appealing
the Bankruptcy Court's orders granting the turnover sale and not
staying the turnover, Ms. Hardy is *not* appealing her
distribution of funds, if any. *See* Notices of Appeal, ECF No. 1
(Civ. No. 16-1968); ECF No. 1 (Civ. No. 16-1969). Instead, Ms.
Hardy appeals the Bankruptcy Court's decision to allow her
property to be sold. In so appealing, she requests that the
Court "reopen the sale of [her] real property." *In re Hope* 7
*Monroe St.*, 743 F.3d at 873. As a matter of law, the Court may
not do so. *See id.*

Moreover, even if Ms. Hardy's appeals regarding the
turnover order were not moot, the Bankruptcy Court did not err
in granting the Trustee's turnover motion. As a preliminary
matter, Ms. Hardy did not file an opposition to the Trustee's
turnover motion in the Bankruptcy Court, despite receiving
"notice of an opportunity to object to turnover" on August 17,
2016. *See* A.R., ECF No. 29-1 at 12-14 (Civ. No. 16-1968)(no
opposition filed between August 17, 2016 motion and September 9,
2016 approval). The notice sent to Ms. Hardy explained that the
Trustee filed a motion for turnover of real property and warned

that failure to respond within twenty-one days may result in the Bankruptcy Court "deem[ing] any opposition waived, treat[ing] the motion as conceded, and issu[ing] an order granting the relief without further notice of hearing." Bankr. No. 16-280, ECF No. 64. By not asserting any arguments in opposition to the turnover motion below, Ms. Hardy waived the arguments she musters on appeal. *Cf. District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").

Had Ms. Hardy not waived her arguments, her appeal nonetheless would have been unsuccessful. The turnover provision of the Bankruptcy Code states in relevant part:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). "The first requirement of Code § 542(a) is that the property be property of the estate." *In re Weiss-Wolf, Inc.*, 60 B.R. 969, 975 (Bankr. S.D.N.Y. 1986). And "[p]roperty of the estate is defined by 11 U.S.C. § 541(a)(1) as 'all legal [or] equitable interests of the debtor in property as of the commencement of the case.'" *In re Pyatt*, 486 F.3d 423, 427 (8th

Cir. 2007). "This definition of estate property is intentionally broad and will reach to bring within the estate every conceivable interest that the debtor may have in property . . . ." *In re Coomer*, 375 B.R. 800, 804 (Bankr. N.D. Ohio 2007).

Under this definition, Ms. Hardy's ownership stake in the Pennsylvania Avenue commercial property is "property of the estate." The other elements of a section 542(a) turnover action are also satisfied. Ms. Hardy had "possession, custody, or control" of the Pennsylvania Avenue property during her bankruptcy case, *see Shapiro v. Henson*, 739 F.3d 1198, 1204 (9th Cir. 2014), and the Trustee may "use, sell, or lease" that property, *see* 11 U.S.C. § 542(a).

Ms. Hardy next argues that turnover was improper because she disputes that ACC had a valid lien and this dispute makes turnover impermissible. Appellant's Br., ECF No. 9 at 19-20 (Civ. No. 16-1968)(citing 11 U.S.C. § 542(b)). But as the Trustee points out, *see* Appellee's Br., ECF No. 12 at 23-24 (Civ. No. 16-1968), a turnover proceeding is impermissible when "the amounts *owed to the Debtor* are contested." *In re N. Parent, Inc.*, 221 B.R. 609, 626 (Bankr. D. Mass. 1998) (emphasis added); *see In re National Jockey Club*, 451 B.R. 825, 830 (Bankr. N.D. Ill. 2011) ("There is a difference between property potentially *owed to* a debtor and property *owned by* the debtor.") (emphasis in original). Although Ms. Hardy contends that the amount the

14

estate *owes to ACC* is disputed, she does not argue that the amounts *owed to her* are disputed. *See, e.g.*, Appellant's Br., ECF No. 9 at 19 (Civ. No. 16-1968).

Although turnover is impermissible as to assets "whose title is in dispute," *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C. Cir. 1991), Ms. Hardy does not explain how the dispute between her and ACC in the District of Columbia courts raises doubts as to the validity of the property's title. *See generally* Appellant's Br., ECF No. 9. What's more, in order for a dispute to render turnover inappropriate, the dispute must be "legitimate." *In re Conex Holings, LLC*, 518 B.R. 792, 801 (Bankr. D. Del. 2014). As the following discussion demonstrates, the Court is persuaded that the Bankruptcy Court properly granted summary judgment in favor of ACC.[5] *See infra* Sec. D. Because ACC had a valid deed of trust lien on the property, Ms. Hardy's purported "dispute" is not legitimate and does not render the turnover order erroneous.

Finally, Ms. Hardy contends that the Bankruptcy Court lacked jurisdiction to order turnover because her dispute with ACC gave rise to a "non-core" proceeding or, alternatively, because *Stern v. Marshall*, 564 U.S. 462 (2011) has called into

---

[5] Additionally, the Superior Court rejected Ms. Hardy's claims regarding the validity and enforceability of her agreement with ACC. *See* A.R., ECF No. 12-1 at 58-65 (Civ. No. 16-1968).

question the jurisdiction of a bankruptcy court even as to those proceedings designated as "core" under 28 U.S.C. § 157(b)(2). *See* Appellant's Br., ECF No. 9 at 20 (Civ. No. 16-1968). However, as previously discussed, the turnover statute is not being used to recover assets with disputed title in this case. *Compare with In re Soundview Elite Ltd.*, No. 14-3179, 2014 WL 2998529, at *3 (S.D.N.Y. July 3, 2014) (explaining that when "the turnover statute is used to recover assets with disputed title when the estate's claim of ownership is legitimately debatable," such an action can only be understood as a "non-core" proceeding) (internal quotations and citations omitted). As such, her jurisdictional argument fails as "the reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions." *In re Pali Holdings, Inc.*, 488 B.R. 841, 850 (Bankr. S.D.N.Y. 2013); *see also* 28 U.S.C. § 57(b)(2)("Core proceedings include . . . (E) orders to turn over property of the estate.").

Accordingly, the Trustee's motion to dismiss Ms. Hardy's appeals as to the turnover orders is **GRANTED**. Likewise, the Bankruptcy Court's orders (1) granting the Trustee's turnover motion, *see* ECF No. 1 (Civ. No. 16-1968); and (2) clarifying that the turnover order is not stayed, *see* ECF No. 1 (Civ. No. 16-1969), are **AFFIRMED**.

**B. The Bankruptcy Court's Conversion Order is Affirmed**

Ms. Hardy next argues that the Bankruptcy Court erred when it denied her motion "requesting termination of conversion to Chapter 7 liquidation." *See* Appellant's Br., ECF No. 9 at 7-14 (Civ. No. 16-1968); ECF No. 1 (Civ. No. 16-1970). She contends that ACC did not have standing to request that her case be converted to Chapter 7 liquidation because ACC was not her mortgage lender and thus, is not a "party in interest." *See* Appellant's Br., ECF No. 9 at 9, 11-14 (Civ. No. 16-1968). In addition, Ms. Hardy argues that she did not consent to Chapter 7 conversation and was denied due process because her opposition was not "discussed at all, at the [conversion] hearing." *Id.* at 12. The Trustee responds that Ms. Hardy cannot "terminate" a conversion. *See* Appellee's Br., ECF No. 12 at 12-14 (Civ. No. 16-1968). What's more, he argues that ACC did have standing as a party in interest to request conversion. *Id.* at 14-17.

Ms. Hardy has not appealed the Bankruptcy Court's order converting the case from Chapter 13 to Chapter 7; instead, she appealed the order denying her motion requesting "termination" of the conversion to Chapter 7. *See* ECF No. 1 (Civ No. 16-1970). Thus, as the Court concluded when considering Ms. Hardy's emergency motion, Ms. Hardy is "effectively appealing an order denying a motion for reconsideration." Mem. Op., ECF No. 17 at 6 (Civ. No. 16-1968). Federal Rule of Bankruptcy Procedure 9024

contemplates motions for reconsideration and applies Federal
Rule of Civil Procedure 60 to such motions in bankruptcy
proceedings.[6] On appeal, an order denying a motion for
reconsideration is reviewed for abuse of discretion. *United
States v. Philip Morris USA*, Inc., 840 F.3d 844, 852 (D.C. Cir.
2016). The Bankruptcy Court abuses its discretion if it "did not
apply the correct legal standard or misapprehended the
underlying substantive law" or if its ruling was not "within the
scope of permissible alternatives in light of the relevant
factors and the reasons given to support it." *Smalls v. United
States*, 471 F.3d 186, 191 (D.C. Cir. 2006). In this case, the
Bankruptcy Court did not abuse its discretion in denying Ms.

---

[6] Federal Rule of Civil Procedure 60(b) provides in full:

> On motion and just terms, the court may relieve a
> party or its legal representative from a final
> judgment, order, or proceeding for the following
> reasons: (1) mistake, inadvertence, surprise, or
> excusable neglect; (2) newly discovered evidence that,
> with reasonable diligence, could not have been
> discovered in time to move for a new trial under Rule
> 59(b); (3) fraud (whether previously called intrinsic
> or extrinsic), misrepresentation, or misconduct by an
> opposing party; (4) the judgment is void; (5) the
> judgment has been satisfied, released or discharged;
> it is based on an earlier judgment that has been
> reversed or vacated; or applying it prospectively is
> no longer equitable; or (6) any other reason that
> justifies relief.

Hardy's motion to reconsider its order converting the case to Chapter 7.[7]

As an initial matter, Ms. Hardy's appeal is flawed, arguably fatally, because it challenges the merits of the underlying order——the conversion order——rather than the order from which the appeal was taken——the order denying the motion for reconsideration. *See In re Schueller*, 124 B.R. 98, 100 (D. Colo. 1991) (explaining that district court review of an appeal from a denial of a motion for reconsideration is "limited to considering whether the bankruptcy court abused its discretion in denying the motion [for reconsideration], not whether the court erred as a matter of law in granting the [underlying] motion in the first place").

Regardless, Ms. Hardy's primary argument—that ACC did not have standing to file a motion to convert the case—is not persuasive. First, Chapter 13 specifies that "on request of a party in interest or the United States trustee . . . the court may convert a case under [Chapter 13] to a case under [C]hapter 7 . . . or may dismiss a case under [Chapter 13], whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1307(c). Here, the Chapter 13 Trustee filed a

_____

[7] Review of a decision to convert a case is also decided on an "abuse of discretion" standard. *See, e.g., In re Cabral*, 285 B.R. 563, 570-71 (1st Cir. B.A.P. 2002).

motion to dismiss, separate and apart from ACC's motion to dismiss or, in the alternative, to convert to Chapter 7. *See* A.R., ECF No. 12-1 at 7 (Civ. No. 16-1968)(Docket Entry 21). Based on just the Chapter 13 Trustee's motion to dismiss, the Bankruptcy Court was statutorily mandated to consider dismissal or conversion to Chapter 7. 11 U.S.C. § 1307(c).

Section 1307(c) requires a two-part analysis: (1) a determination of "cause" justifying dismissal or conversion; and if there is "cause," (2) a decision between dismissal or conversion based not on which of those two options the moving party requests, but rather based on "the best interests of creditors and the estate." *In re Jensen*, 425 B.R. 105, 109 (Bankr. S.D.N.Y. 2010) (quoting 11 U.S.C. § 1307(c)). Here, the Bankruptcy Court explicitly acknowledged the need to assess "the best interests of creditors and the estate." *See* July 15, 2016 Mot. to Convert Case Hrg. Tr. ("Hrg. Tr."), ECF No. 17 at 81 (61:13-16) (Civ. No. 16-1968). Its subsequent determination that conversion rather than dismissal was in "the best interests of creditors and the estate" acknowledged and considered ACC's recommendation in favor of conversion, *id.* at 85-86 (65:22-66:1), but did not depend on or require that recommendation, *see id.* at 87 (67:14-23). Thus, ACC's purported lack of standing is not a basis for concluding that the Bankruptcy Court abused its discretion in denying Ms. Hardy's motion to "terminate" the

Chapter 7 conversion. Indeed, the Court could not conclude that the Bankruptcy Court abused its discretion in converting the case to Chapter 7 in the first place, as it could have properly converted the case even if ACC had never filed its motion.

Moreover, ACC is a "party in interest" with standing to file a conversion motion. *See* 11 U.S.C. § 1307(c). A "party in interest" is any party "who has an actual pecuniary interest in the case," "who has a practical stake in the outcome of a case," or "who will be impacted in any significant way in the case." *In re Sobczak*, 369 B.R. 512, 518 (B.A.P. 9th Cir. 2007)(citations omitted). As a party holding a mortgage claim on Ms. Hardy's property, ACC is a "party in interest" no matter what doctrinal formulation is used: it has "an actual pecuniary interest" and a "practical stake" in the outcome of the case, and it would be "impacted" in a "significant way" by decisions made in the case. *See id.; see also In re Reynolds*, 455 B.R. 312, 319 (D. Mass. 2011) (finding that a bank "had standing to move to convert the case as a 'party in interest' under 11 U.S.C. § 1307(c), regardless of whether it held secured or unsecured debt"); *In re Muscatello*, No. 06-11143, 2006 WL 3437469, at *3 (N.D.N.Y. Nov. 29, 2006) ("A creditor is a 'party in interest,' and as such is an appropriate party to bring a motion to dismiss or convert under § 1307(c).")

ACC's status as a "party in interest" is not diminished because Ms. Hardy disputes the validity of its claim. Although "party in interest" is not defined in Chapter 13, courts rely on the definition set forth in Chapter 11 when construing Chapter 13's language. *See, e.g.*, *In re Armstrong*, 303 B.R. 213, 219 (B.A.P. 10th Cir. 2004) ("[d]rawing guidance from § 1109(b), this Court has interpreted the phrase "party in interest" to mean all persons whose pecuniary interests are directly affected by the bankruptcy proceedings and includes anyone who has an interest in the property"). A Chapter 11 "party in interest" includes "a creditor," 11 U.S.C. § 1109(b), and "a creditor" is statutorily defined as an "entity that has a *claim* against the debtor," *id.* § 101(10)(A) (emphasis added). A "claim" is a "right to payment, whether or not such right is . . . *disputed*, [or] undisputed." *Id.* § 101(5)(A) (emphasis added). Thus, ACC is a "party in interest," even as a creditor whose claim was disputed.[8] Indeed, Ms. Hardy lists ACC as a "creditor who [has] claims secured by property" on her bankruptcy petition. A.R., ECF No. 21-1 at 72 (Civ. No. 17-1017).

Finally, Ms. Hardy argues that the Bankruptcy Court erred and deprived her of due process when it converted her case and denied her motion to "terminate" the conversion because it did

---

[8] As the following demonstrates, the Court determines that ACC's lien was indeed valid. *See infra* Sec. D.

not consider her motion to convert to Chapter 11 and did not

consider her opposition to ACC's motion. *See* Appellant's Br.,

ECF No. 9 at 8, 12 (Civ. No. 16-1968). These arguments are

devoid of merit. The Bankruptcy Court considered and rejected

Ms. Hardy's motion to convert to Chapter 11. Hrg. Tr., ECF No.

17 at 84-85 (64:22-65:13), 86 (66:24-25) (Civ. No. 16-1968). It

also heard testimony concerning the Superior Court litigation

involving Ms. Hardy and ACC. *Id.* at 50 (30:18-22), 51 (31:17-

21), 58-60 (38:17-40:15). Furthermore, the Court's conclusion

that conversion to Chapter 7 was warranted was based on its

reasoned assessment of the estate's best interests. *See id.* at

87 (67:14-23), 89 (69:9-10). Finally, the Bankruptcy Court's

decision to convert to Chapter 7 is supported by the record

evidence presented and the Bankruptcy Court thoroughly explained

its legal conclusions. *Id.* at 83-88 (63:18-68:16).[9]

Therefore, the Bankruptcy Court's Order denying Ms. Hardy's

motion requesting "termination" of conversion to Chapter 7, *see*

ECF No. 1 (Civ. No. 16-1970), is **AFFIRMED**.

---

[9] To the extent that Ms. Hardy's "termination" motion could be construed as a motion to dismiss her Chapter 7 case under 11 U.S.C. § 707, the Bankruptcy Court's denial of that motion was not improper because Ms. Hardy did not make a showing of cause and did not demonstrate why a dismissal was justified. *See Terry v. Sparrow*, 328 B.R. 450, 455 (M.D.N.C. 2005).

**C. The Bankruptcy Court's Contempt Order is Affirmed**

Ms. Hardy also appeals the Bankruptcy Court's decision to grant the Trustee's contempt motion and deny her opposition motion, styled as a "motion to dismiss Trustee's claims." *See* ECF No. 1 (Civ. No. 17-1017). She argues that the Bankruptcy Court ignored her purported lease to carry on business affairs on behalf of Capitol Hill Beauty Salon. Appellant's Br., ECF No. 19 at 7, 11 (Civ. No. 17-1017). Had the Court considered this lease, she argues, it could not have issued the turnover order and thus, she would not be held in contempt. *See id.* Further, Ms. Hardy argues that she never signed her Chapter 13 voluntary petition, in an attempt to suggest that the entire proceeding should be disregarded. *Id.* at 6-9. Ms. Hardy also charges the Trustee with an ethical violation, arguing that he filed the turnover motion before the application to employ special counsel was accepted by the Bankruptcy Court. *Id.* at 7, 9-10. According to Ms. Hardy, this ethical oversight should nullify the turnover over and the contempt order. *See id.*

The Trustee argues that this appeal is also moot, now that the property has been sold. Appellee's Br., ECF No. 21 at 12-14 (Civ. No. 17-1017). He also argues that the Bankruptcy Court's contempt order was appropriate because it was issued in aid of its turnover order. *Id.* at 14-21. Moreover, the Trustee argues that Ms. Hardy waived any argument concerning her missing

24

signature by not raising it below. *Id.* at 21-23. Finally, the Trustee contends that there was no unethical delay in filing an employment application, and, in any event, a delay would not nullify the Bankruptcy Court's order. *Id.* at 27-28.

In granting the Trustee's contempt motion, the Bankruptcy Court found that Ms. Hardy had violated its turnover order by refusing to vacate the property, continuing to rent the property, and interfering with the Trustee's sale of the property. *See* A.R., ECF No. 29-2 at 5-11 (Civ. No. 16-1968). Instead of sanctioning Ms. Hardy, even though "clear and convincing evidence demonstrate[d] that [Ms. Hardy] was in civil contempt," *id.* at 9, the Bankruptcy Court merely ordered Ms. Hardy to comply with the turnover order, *see id.* at 10-11. She was directed to turn over all leases, which were declared void, and cease interfering with the Trustee's sale of the property. *See id.* Because the result of the contempt finding was to effectuate the turnover order and because the Court has already concluded that Ms. Hardy's appeal of the turnover order is moot, Ms. Hardy's appeal of the contempt order is also likely moot under the doctrine of equitable mootness. *See, e.g.*, *In re AOV Indus., Inc.,* 792 F.2d at 1147 (finding the appeal moot because the bankruptcy plan had been "substantially implemented," including settlements completed and payments to creditors).

Nonetheless, the Court finds that the Bankruptcy Court did not err in finding Ms. Hardy in contempt of court. It is "firmly established that the power to punish for contempt[] is inherent in all courts," as courts are "vested, by their very creation, with power to impose . . . submission to their lawful mandates." *Chambers v. Nasco*, 501 U.S. 32, 43-44 (1991). Indeed, such authority extends to a bankruptcy court, which is empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see In re 1900 M St. Assocs., Inc.*, 319 B.R. 302, 306 (Bankr. D.D.C. 2005)(concluding that the Bankruptcy Court has the power of mandamus under 11 U.S.C. § 105(a)). Here, the Bankruptcy Court issued its contempt order to effectuate compliance with its turnover order. *See* A.R., ECF No. 29-2 at 5-11 (Civ. No. 16-1968). As previously discussed, this Court concludes that the turnover order was properly entered and the record clearly establishes that Ms. Hardy did not comply with the Bankruptcy Court's order. Indeed, Ms. Hardy readily admits that she "refused" to comply with the turnover order. Appellant's Br., ECF No. 19 at 13 (Civ. No. 17-1017). Thus, the Bankruptcy Court did not err in holding Ms. Hardy in contempt.

Ms. Hardy's arguments to the contrary are all unavailing. First, she argues that she entered into a lease with her mother on behalf of her business, Capitol Hill Beauty Salon, and this

lease was not property of the estate. *See* Appellant's Reply, ECF
No. 22 at 3, 7-8. Because the Bankruptcy Court erred in allowing
the property to be sold free and clear of the lease, Ms. Hardy
contends that she could not be found in contempt. *Id.* The
Bankruptcy Court found that there was no lease, as one had not
been provided. *See* A.R., ECF No. 29-2 at 6-7 (Civ. No. 16-1968).
The Court agrees. In reviewing the record, it is clear that Ms.
Hardy stated—under oath—that there were no "executory contracts
and unexpired leases" on the property. A.R., ECF No. 21-1 at 81
(Civ. No. 17-1017); *see id.* at 90 (signing declaration that all
schedules filed are true and correct). Ms. Hardy may not now
claim there was a lease dating back to 2010, years after the
deadline to assume or reject a lease passed under 11 U.S.C. §
365(d). *See Davis v. Wakelee*, 156 U.S. 680, 689 (1895)("[W]here
a party assumes a certain position in a legal proceeding, and
succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary
position, especially if it be to the prejudice of the party who
has acquiesced in the position formerly taken by him.").[10]

---

[10] The Court also agrees that Ms. Hardy, as co-owner of the
property, had the right to occupy the property and thus, needed
no lease. *See United States v. Craft*, 535 U.S. 274, 279-80
(2002)(discussing common law rights belonging to tenants-in-
common, including the right to use the property). Therefore, the
Court cannot find that the Bankruptcy Court clearly erred in
finding that it was not credible that Ms. Hardy entered into a

Moreover, the fact that Ms. Hardy did not sign one of the many pages on her voluntary bankruptcy petition does not require dismissal of the action or reversal of the contempt order. True, Ms. Hardy did not sign page eight of her voluntary Chapter 13 bankruptcy petition. A.R., ECF No. 21-1 at 55 (Civ. No. 17-1017). Page eight stated that Ms. Hardy understood the risks of filing *pro se*. *See id.* Although Ms. Hardy failed to include her signature, she did include her name, phone number, and email address. *Id.* Ms. Hardy also signed every other page requiring a signature on the Chapter 13 petition. *See id.* at 48-103. More importantly, two days later, on June 2, 2016, Ms. Hardy filed a revised voluntary bankruptcy petition, filing under Chapter 7. *See id.* at 103-07. This time, Ms. Hardy signed page eight of that petition, which contained the same language as the unsigned May 31, 2016 petition. *Id.* at 110.

Having considered the lengthy record here, it is clear that Ms. Hardy's argument that she did not voluntarily file for bankruptcy is untenable. Indeed, Ms. Hardy has consistently represented before this Court and the Bankruptcy Court that she voluntarily filed for Chapter 13 bankruptcy. *See, e.g.*, Hrg. Tr., ECF No. 17 at 26 (6:21-25)(Civ. No. 16-1968)("[W]hen I filed the Chapter 13 [petition] . . . ."); Appellant's Br., ECF

_____

lease with her mother when she already had a right to occupy the property. *See* A.R., ECF No. 29-2 at 8-9 (Civ. No. 16-1968).

No. 9 at 8 (Civ. No. 16-1968)("The Debtor['s] . . . bankruptcy proceeding commenced on May 31, 2016, when Debtor filed her voluntary Chapter 13 Petition."). Regardless, "[n]o provision of the Bankruptcy Code, the Bankruptcy Rules or any other authority requires the Court to dismiss a debtor's case merely because he or she failed to sign the petition." *In re Rose*, 422 B.R. 896, 900 (Bankr. S.D. Ohio 2010); Fed. R. Bankr. P. 9011(a) (requiring that pro se debtors shall sign "all papers" and that an unsigned paper may be "corrected promptly").

Ms. Hardy finally argues that dismissal is warranted because the Trustee filed his motion for a turnover order before the Court accepted his application to employ special counsel. This argument must also fail. The Trustee filed the employment application on August 16, 2016, *see* A.R., ECF No. 21-1 at 14 (Civ. No. 17-1017); he filed the turnover motion on August 17, 2016, *see id.*; and the Bankruptcy Court accepted Trustee's application to employ special counsel on September 8, 2016, *id.* at 17. 11 U.S.C. § 327(a) authorizes a trustee to employ attorneys with the Court's approval. If an employed attorney submits a motion before the court approves the application, a court need not dismiss the bankruptcy proceeding. Failure to submit a timely application merely results, at worse, in lack of payment for the work done before approval. *See In re Lillian Laurence, Ltd.*, 136 B.R. 1, 3 (Bankr. D.D.C. 1992)(finding that

counsel's failure to timely file an application for employment justified denial of compensation).

Therefore, the Bankruptcy Court's order granting the Trustee's motion for contempt, *see* ECF No. 1 (Civ. No. 17-1017), is **AFFIRMED**.

### D. The Bankruptcy Court's Summary Judgment Order is Affirmed

On May 4, 2017, ACC filed a motion for summary judgment, seeking to establish that it had a valid deed of trust lien on Ms. Hardy's property. A.R., ECF No. 29-3 at 25-26 (Civ. No. 16-1968). Ms. Hardy filed an opposition and cross-motion for summary judgment. *See id.* at 37-40. On June 17, 2017, the Bankruptcy Court found that ACC's deed of trust lien was indeed valid and granted ACC's motion for summary judgment. *Id.* at 52-69. It also denied Ms. Hardy's objection. *Id.* at 50-51. Ms. Hardy noticed an appeal of that summary judgment order in this Court on June 30, 2017. *See* ECF No. 1 (Civ. No. 17-1316).

Ms. Hardy primarily argues that the Bankruptcy Court should not have ruled on ACC's motion for summary judgment because the same issue—whether ACC had a valid lien—was the subject of an appeal in the District of Columbia Court of Appeals. Appellant's Br., ECF No. 7 at 7-12 (Civ. No. 17-1316). She also argues that the Bankruptcy Court did not have "core jurisdiction" over the issue. *Id.* Next, Ms. Hardy argues that the Bankruptcy Court

erred in granting ACC's motion because ACC did not file a proof of its claim. *Id.* at 13, 21-22. Finally, she contends that any lien is invalid because ACC was not licensed to do business in the District of Columbia. *Id.* at 14.

ACC argues that the Bankruptcy Court had jurisdiction to adjudicate the validity of its lien and enter a final order. ACC Opp'n, ECF No. 32 at 15 (Civ. No. 16-1968). It also argues that the Bankruptcy Court properly granted its motion for summary judgment. *Id.* at 16-18.

Summary judgment in bankruptcy is governed by Bankruptcy Rule 7056, which incorporates the Federal Rule of Civil Procedure 56 standard. *U.S. v. Spicer*, 57 F.3d 1152, 1159 (D.C. Cir. 1995). Therefore, a motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). To defeat summary judgment, the nonmoving party must demonstrate that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A material fact is one that is capable of affecting the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, in the summary

judgment analysis "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

As an initial matter, the Bankruptcy Court had dismissed most of Ms. Hardy's arguments related to the validity of ACC's lien at a hearing on April 19, 2017. *See* A.R., ECF No. 29-3 at 25 (Civ. No. 16-1968); *see also* A.R., ECF No. 6 at 25-26 (Civ. No. 17-1316)(April 28 Order overruling several of Ms. Hardy's objections after the April 19, 2017 hearing). At the April 19, 2017 hearing, the Bankruptcy Court "took evidence as to some of the issues raised by [Ms. Hardy's] objection[s] and ruled against the debtor as to those issues." A.R., ECF No. 6 at 25-26 (Civ. No. 17-1316). Notably, Ms. Hardy did not appeal the Bankruptcy Court's April 28, 2017 order dismissing most of her objections. *See* ECF No. 1 (Civ. No. 17-1316)(appealing Bankruptcy Court's summary judgment order). In addition, after reviewing the voluminous record,[11] it does not appear that Ms. Hardy ordered or provided the transcript from the April 19, 2017 hearing. *See generally* A.R., ECF No. 6 at 3 (Civ. No. 17-1316)

---

[11] Despite having done so, it is not the Court's duty to hunt through the many lengthy Administrative Records for the April 19, 2017 transcript. *See Potter v. District of Columbia,* 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("[J]udges 'are not like pigs, hunting for truffles buried in briefs' or the record." (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991))).

(Appellant's Appendix, which lists the April 19, 2017 hearing in the table of contents, but does not include the transcript). Pursuant to Federal Rule of Bankruptcy Procedure 8009(b)(1), it is the appellant's duty to order a transcript of proceedings that the appellant considers necessary for the appeal. Ordinarily, not filing a necessary transcript could result in dismissal if the Court needs the record in order to understand the testimony taken, evidence collected, or the reasons given by the Bankruptcy Court. *See In re Echeverry*, 720 Fed. Appx. 598, 600 (Jan. 23, 2018 11th Cir.)("We've explained that an appellant has the burden to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment.")(citations and quotations omitted). Ms. Hardy's failure to order the transcript prevents this Court from conducting a full and meaningful review of the Bankruptcy Court's decision. Because Ms. Hardy failed to produce the necessary transcript explaining the Bankruptcy Court's rationale in dismissing several of her arguments and because Ms. Hardy only appeals the summary judgment order, the Court will exclusively consider the arguments that she raises in response to that order.

First, Ms. Hardy renews her recurring argument that the Bankruptcy Court did not have jurisdiction to grant ACC's motion

for summary judgment. Appellant's Br., ECF No. 7 at 9 (Civ. No. 17-1316). The Court rejects the argument and finds that the Bankruptcy Court indeed had jurisdiction to determine the validity of ACC's lien. Bankruptcy Courts have full authority to adjudicate "core" claims that go to the heart of the bankruptcy process. "[C]ore proceedings are those that arise in a bankruptcy case or under Title 11. The detailed list of core proceedings in [28 U.S.C.] § 157(b)(2) provides courts with ready examples of such matters." *Stern v. Marshall*, 564 U.S. 462, 476 (2011). Whether ACC had a valid lien squarely fits within the categories of core proceedings delineated in 28 U.S.C. § 157(b)(2). For example, core proceedings include matters concerning the administration of the estate, which "includes, but [is] not limited to . . . (K) determinations of the validity, extent, or priority of liens." 28 U.S.C. § 175(b)(2). As discussed, the commercial real estate property was clearly property of the estate pursuant to 11 U.S.C. § 541. As such, the Bankruptcy Court clearly had jurisdiction to determine the validity of a lien asserted against the property of the estate. *See In re McAdams, Inc.*, 66 F.3d 931, 936 (8th Cir. 1995)("As the Seventh Circuit has stated, 'resolving competing claims to property that belonged to the debtor when it filed a petition in bankruptcy is one of the central functions of

bankruptcy law.'")(quoting *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir. 1987)).

Ms. Hardy primarily argues that the Bankruptcy Court should not have ruled on ACC's summary judgment motion because the same issues were pending in the District of Columbia Court of Appeals. Appellant's Br., ECF No. 7 at 8, 10-11. According to Ms. Hardy, ACC may not "re-litigate" its claims in a different forum, especially when the case has not been removed from the District of Columbia courts. *Id.* at 8-11. The Court agrees with the Bankruptcy Court that it is "irrelevant" that Ms. Hardy appealed the Superior Court's decision granting ACC's motion for summary judgment to the Court of Appeals. A.R., ECF No. 29-3 at 62 (Civ. No. 16-1968). A voluntary bankruptcy petition "operates as a stay" of any proceeding initiated to recover a claim against a debtor that arose before the commencement of the bankruptcy case. 11 U.S.C. § 362(a) (automatic stay provision). Thus, the District of Columbia Court of Appeals properly stayed Ms. Hardy's appeal pending her bankruptcy proceeding. *See* Appellant's Br. Ex. 1, ECF No. 7-1 at 3 (Civ. No. 17-1316)(DCCA Order staying appeal "pursuant to 11 U.S.C. § 362(a)"). Ms. Hardy has not challenged the Court of Appeals' ruling. *See* 2014 CA 4580; A.R., ECF No. 29-3 at 62 (Civ. No. 16-1968).

The Court further agrees that it was "necessary" for the Bankruptcy Court to determine the validity of ACC's lien in

order to resolve her case. A.R., ECF No. 29-3 at 62 (Civ. No. 16-1968). Indeed, the Bankruptcy Court granted the Trustee's motion to sell the commercial real estate property. *See* A.R., ECF No. 29-1 at 116 ¶ 5 (Civ. No. 16-1968). Thus, the Bankruptcy Court necessarily determined the validity of ACC's lien in order to appropriately distribute the proceeds from the sale of the property. A.R., ECF No. 29-3 at 62 (Civ. No. 16-1968); *see* 11 U.S.C. §§ 363, 726. What's more, it appears that Ms. Hardy in fact *requested* that the Bankruptcy Court adjudicate the validity of ACC's lien when she filed an "objection to the validity of [ACC's] lien" on April 10, 2017. A.R., ECF No. 4 at 4-9 (Civ. No. 17-1316). Ms. Hardy filed her objection *before* ACC filed its motion for summary judgment on May 4, 2017. *Id.* at 15-16. Accordingly, Ms. Hardy may not now argue that the Bankruptcy Court should not have considered the motion that she filed.

Next, Ms. Hardy appears to argue that ACC did not have standing to file a motion for summary judgment because it never filed proof of its claim and therefore never established that it was indeed the mortgage lender. Appellant's Br., ECF No. 7 at 15-17. The Bankruptcy Court agreed that ACC had not filed proof of its claim. A.R., ECF No. 29-3 at 53 (Civ. No. 16-1968). However, that Court concluded that a secured creditor is not required to file a proof of claim—except in certain situations inapplicable here—because the lien passes through the bankruptcy

case unaffected. *Id.* at 53-54 (citing *Long v. Bullard*, 117 U.S. 617, 620-21 (1886)). Indeed, a secured creditor is not required to file a proof of claim: it is well-established that liens "pass through" bankruptcy proceedings unaffected. *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992). "This means that a secured creditor need not file a claim in a bankruptcy proceeding to preserve its lien. Rather, a creditor with a loan secured by a lien on a debtor's assets may ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt." *In re Be-Mac Transp. Co.*, 83 F.3d 1020, 1025 (8th Cir. 1996) (citation omitted). Indeed, "Congress codified this principle in 1984 'to make clear that the failure of the secured creditor to file a proof of claim is not a basis for avoiding the lien of the secured creditor.'" *Id.* (quoting S. Rep. No. 65, 98th Cong., 1st Sess. 79 (1983); *see also* 11 U.S.C. § 506(d) ("To the extent that a lien secures a claim against the debtor that is not an allowed secured claim such lien is void, unless . . . (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."). Thus, ACC's failure to file proof of its claim does not affect the validity of its lien.

Finally, Ms. Hardy argues that ACC's lien was invalid because ACC was a foreign corporation not licensed to do business in the District of Columbia at the time the lien was

created. Appellant's Br., ECF No. 7 at 14. The Bankruptcy Court
concluded that it was immaterial whether ACC was registered to
"do business" in the District of Columbia because entering into
a loan or mortgage does not qualify as "doing business in the
District" pursuant to D.C. Code § 29-105.05(a). A.R., ECF No.
29-3 at 58-60 (Civ. No. 16-1968). The Court agrees. Generally, a
foreign corporation must register to do business in the District
of Columbia. D.C. Code § 29-105.02. However, pursuant to D.C.
Code, certain activities do not constitute "doing business."
D.C. Code § 29-105.05. Such exempted activities include
"creating or acquiring indebtedness, mortgages, or security
interests in property" and "securing or collecting debts or
enforcing mortgages or other security interests in property."
*Id.* It is undisputed that ACC obtained a mortgage secured by the
estate property and filed its motion for summary judgment in an
attempt to enforce the claim. Therefore, the Bankruptcy Court
was not required to determine whether ACC was registered to do
business in the District of Columbia. *See id.* Because its
registration status did not affect the validity of its lien, the
Court is not persuaded that the Bankruptcy Court erred in
granting summary judgment before allowing discovery. *See*
Appellant's Br., ECF No. 7 at 12. Discovery would be of no use
to Ms. Hardy in any event. Accepting her contention that ACC was

not registered in the District of Columbia, her argument still lacks merit.

Finally, in light of the Bankruptcy Court's thorough order and meticulous fact-finding, this Court certainly cannot conclude that the Bankruptcy Court "ma[de] [up] the facts," as Ms. Hardy complains. *Id.* Therefore, the Bankruptcy Court's order granting ACC's motion for summary judgment, *see* ECF No. 1 (Civ. No. 17-1316), is **AFFIRMED**.

### E. The Bankruptcy Court's Order Approving the Compromise Settlement is Affirmed

On October 23, 2017, the Bankruptcy Court approved the Trustee's proposed "compromise" with ACC, despite Ms. Hardy's objections. *See* A.R., ECF No. 29-4 at 51-55 (Civ. No. 16-1968). In order to avoid further litigation, the Trustee and ACC proposed a settlement agreement whereby ACC would accept a "short" payment—less than the amount it was allegedly owed—and, in exchange, the Trustee would release ACC of all claims against it. *See id.* at 9 ¶ 20. In approving the compromise, the Bankruptcy Court authorized the Trustee to pay ACC and Ms. White the amounts both were owed pursuant to the agreement. *Id.* at 55. Ms. Hardy noticed an appeal of that approval order in this Court on November 6, 2017. *See* ECF No. 1 (Civ. No. 18-434).

Ms. Hardy argues that the Bankruptcy Court erred in approving the compromise agreement. *See* Appellant's Br., ECF No.

28 (Civ. No. 16-1968). The Trustee opposes her motion. *See*
Appellee's Br., ECF No. 29 (Civ. No. 16-1968). In opposing the
Bankruptcy Court's order, Ms. Hardy renews several previously-
rejected arguments. For example, Ms. Hardy's primary objection
is that the Bankruptcy Court erred because ACC's claims were
invalid—reiterating arguments the Court considered and rejected.
*See supra* Secs. A (ACC's standing), D (ACC's valid claim). She
also argues that the Bankruptcy Court should have "required ACC
to prove the validity" of its mortgage before approving the
compromise. Appellant's Br., ECF No. 28 at 22-25 (Civ. No. 16-
1968). However, the Court already found that the Bankruptcy
Court properly determined the validity of ACC's lien in granting
ACC's motion for summary judgment. *See supra* Sec. D. Ms. Hardy
also seems to argue that the Bankruptcy Court did not have
jurisdiction to determine the validity of ACC's lien. *See*
Appellant's Br., ECF No. 28 at 5 (Civ. No. 16-1968). However, as
previously discussed, 28 U.S.C. § 157(b) clearly states that
"core proceedings" within the Bankruptcy Court's jurisdiction
include "determin[ing] the validity, extent, or priority of
liens." 28 U.S.C. § 157(b)(2)(K).

It is difficult to discern Ms. Hardy's additional
arguments. However, she seems to argue that the compromise
should not have been approved because ACC was not entitled to
earn interest once she filed her bankruptcy petition. *See*

Appellant's Br., ECF No. 28 at 18-20 (Civ. No. 16-1968). Not so. 11 U.S.C. § 506(b) states that "there shall be allowed to the holder of [a secured claim worth less than a certain amount] interest on such claim, and any reasonable fees, costs, or charges . . . ." Indeed, it is clear that an "oversecured" creditor is entitled to postpetition interest, whether or not the loan documents upon which the claim is based provide for such interest. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). It is clear that ACC was an oversecured lender, as the lien was worth less than the value of the property. *See* A.R., ECF No. 29-4 at 7-8 (stating that ACC's lien was worth around $400,000, while the property was sold for $850,000). Thus, ACC may accrue postpetition interest and the Bankruptcy Court did not err in approving an agreement that provided such payment.

Finally, Ms. Hardy appears to object to ACC receiving over $4,000 in legal fees as part of the compromise because it "only made 5 minutes in comments at the hearing . . . submitted an opposition to debtor's waiver fees and submitted nothing else." Appellant's Br., ECF No. 28 at 20-21 (Civ. No. 16-1968). The Bankruptcy Court found that $4,000 was a "paltry sum" for the work ACC has done in defending its claims. A.R., ECF No. 29-4 at 53. Again, 11 U.S.C. § 506(b) allows an oversecured creditor to receive reasonable fees. In light of the sheer amount of

litigation that has taken place,[12] the Bankruptcy Court clearly did not err when it found that the fee amount was "plainly a reasonable sum" after considering "the number of appearances . . . and the number of filings" ACC's attorneys made in these cases. *Id.* at 54.

Federal Rule of Bankruptcy Procedure 9019 authorizes a trustee to enter into a compromise or settlement and allows a bankruptcy court to approve such a compromise. Because the Bankruptcy Court determined that the settlement was reasonable based on an "objective evaluation of developed facts," the Court cannot find that it erred in approving the compromise. *In re Chreky, Inc.*, 448 B.R. 596, 609 (D.D.C. 2011) (quotations omitted). Therefore, the Bankruptcy Court's order approving the compromise, *see* ECF No. 1 (Civ. No. 18-434), is **AFFIRMED**.[13]

Finally, the Trustee filed a motion to dismiss Ms. Hardy's appeal for lack of jurisdiction. Appellee's Mot., ECF No. 21

---

[12] This litigation includes the main bankruptcy case (Case No. 16-280), the adversary proceeding initiated in bankruptcy court (Case No. 16-10034), and six appeals before this Court (Cases Nos. 16-1968, 16-1969, 16-1970, 17-1017, 17-1316, 18-434). ACC and Ms. Hardy also litigated their claims in District of Columbia courts.

[13] If the estate is administratively insolvent, Ms. Hardy would lack standing to challenge the compromise. *See* A.R., ECF No. 29-4 at 51-52 (Civ. No. 16-1698). The Court cannot determine on the record before it whether the estate was administratively insolvent, although it appears that it was. *See id.* at 9 (listing the proposed settlement, which includes no payment to Ms. Hardy).

(Civ. No. 16-1968). He argues that Ms. Hardy did not file her appeal until December 7, 2017 and, as such, her appeal is untimely under Federal Rule of Bankruptcy Procedure 8002. *Id.* at 1-3. While the Court agrees that Ms. Hardy's appeal should be denied, it does not agree that her appeal is barred as untimely. On February 23, 2018, the Bankruptcy Court "determined that the debtor had indeed filed a notice of appeal on November 6, 2017." A.R., ECF No. 1-1 at 2 (Civ. No. 18-434). Indeed, Ms. Hardy's notice of appeal is stamped as "received" on November 6, 2017. Because the Trustee agrees that November 6, 2017 was the last day that Ms. Hardy could have timely filed her appeal, *see* Appellee's Mot., ECF No. 21 ¶ 6 (Civ. No. 16-1968), the Court **DENIES** the motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the Court **AFFIRMS** each of the Bankruptcy Court's six orders that Ms. Hardy has challenged on appeal in civil case numbers 16-1968, 16-1969, 16-1970, 17-1017, 17-1316, and 18-434. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:     **Emmet G. Sullivan**
            **United States District Judge**
            **September 11, 2018**